## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THOMAS BENJAMIN BROWN,

      Petitioner,

v.                                                    Case No. 3:19-cv-808-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.   **Status**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). In 2002, in Duval County, Florida, Petitioner pled guilty to sexual battery and was sentenced to 7 years imprisonment to be followed by 5 years of sex offender probation. However, in 2013, while on probation, Petitioner pled guilty to a violation of probation and was sentenced to 25 years imprisonment to be followed by 5 years of sex offender probation. He now challenges the 2013 judgment.

Respondents filed a Response (Doc. 5) with exhibits (Docs. 5-1 to 5-3; Resp. Ex.). Petitioner filed a Reply (Doc. 10). This case is ripe for review.[1]

## II.   Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. ne2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Richter</u>, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. <u>See Strickland</u>, 466 U.S. at 687.

To establish deficient performance, a person challenging a conviction must show that "counsel's

representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great

deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal

citations modified). In other words, "[i]n addition to the deference to counsel's

performance mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are considering whether

to grant federal habeas relief from a state court's decision." <u>Rutherford v.

Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting

<u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356,

371 (2010).

### III.  **Procedural History**

Petitioner was arrested on May 8, 2002, and charged by amended information with armed burglary with assault or battery and sexual battery. Resp. Ex. A 1-6, 9-10. Pursuant to a negotiated plea agreement, Petitioner pled guilty to sexual battery and was sentenced to a term of imprisonment of 7 years to be followed by 5 years of sex offender probation. Id. at 11-18.

On January 19, 2009, Petitioner was released from the custody of the Florida Department of Corrections and was sent to the Florida Civil Commitment Center (FCCC). While there, he was charged with new criminal offenses. Thus, a probation officer filed affidavits of violation of probation, and on March 5, 2013, Petitioner was arrested pursuant to a warrant for the violation. See id. at 27-81.

On August 1, 2013, Petitioner admitted to the violation of probation through a written admission and orally in court. See id. at 84, 140-45. During the hearing, Petitioner acknowledged under oath that he signed the admission form after reviewing it with his attorney, who advised him and answered all of his questions. Id. at 143. He also acknowledged that he was admitting the violation, no one had pressured or forced him to do so, and no one promised him anything in exchange for his admission. Id.

Before his sentencing hearing, his counsel filed a motion for a downward departure in sentence, asking the court to reinstate a probationary sentence or

sentence him to 10 years imprisonment with credit for the 7 years he already served. <u>Id.</u> at 85-87. The state filed a sentencing memorandum requesting that the court sentence Petitioner to a 30-year term of imprisonment. <u>Id.</u> at 90-92. On September 12, 2013, the state court sentenced him to 25 years imprisonment to be followed by 5 years of probation. <u>Id.</u> at 146-73; <u>see</u> <u>id.</u> at 104-09 (Judgment); <u>see also</u> Resp. Ex. F (Corrected Judgment – re-recorded in 2014 to correct the count numbers).

On September 25, 2013, Petitioner filed a pro se motion to withdraw his plea, Resp. Ex. A at 120-23, which the state court denied, Resp. Ex. B at 7-12. Petitioner, through counsel, filed a notice of appeal. <u>See</u> Resp. Ex. A at 125. The First District Court of Appeal entered a per curiam affirmance on October 3, 2014, without issuing a written opinion. <u>See</u> Resp. Ex. E.

On December 1, 2014 (mailbox rule), Petitioner filed a pro se motion for reduction or modification of sentence. Resp. Ex. F. A review of the state court docket reflects that this motion was never ruled on. On August 14, 2015 (mailbox rule), and August July 22, 2016 (mailbox rule), Petitioner filed a motion and amended motion under Florida Rule of Criminal Procedure 3.850. <u>See</u> Resp. Ex. G at 1-14, 19-39. By order dated January 8, 2018, the state court denied Petitioner's Rule 3.850 motions. Resp. Ex. G at 45-65. Petitioner appealed, <u>id.</u> at 66, and the First DCA per curiam affirmed the denial of his Rule 3.850 motions without issuing a written opinion, Resp. Ex. H. Petitioner

filed a request for a written opinion, Resp. Ex. I, which the First DCA granted, Resp. Ex. J. On February 15, 2019, the First DCA issued a written opinion affirming the denial of Petitioner's Rule 3.850 motions. Resp. Ex. K; see also Brown v. State, 264 So. 3d 1097, 1098-99 (Fla. 1st DCA 2019). Petitioner then filed the instant Petition.

## IV.   Analysis

### A. Ground One

Petitioner titled this ground "Ineffective Counsel" and states: "Attorney failed to challenge the validity of the probation. Attorney failed to preserve double jeopardy issue. Attorney persuaded defendant to plea open. State offered ten years. Attorney insisted the Judge would deliver a lesser sentence or at the most defendant would get no more than 10 years." Doc. 1 at 5. Petitioner indicates that he raised these arguments on direct appeal and in his state court postconviction proceeding under Rule 3.850. Id. at 6.[2]

After his sentencing, Petitioner filed a pro se motion to withdraw his plea, in which he argued that his counsel was ineffective for advising him to enter a

---

[2] Petitioner did not argue that the state offered him a ten-year plea deal in any of his state court filings. Nor does he expound upon such argument in his Petition. Insofar as he attempts to raise an ineffective assistance of counsel claim based on the state's alleged ten-year plea deal, such a claim is unexhausted and procedurally barred. Petitioner has not shown cause or prejudice to excuse the bar, nor has he shown a fundamental miscarriage of justice would result if such a claim is not resolved on the merits. See Ward v. Hall, 592 F.3d 1144, 1156-57 (11th Cir. 2010).

plea and assuring him the court would sentence him to 10 years; for failing to challenge or object to the point sheet for sentencing; and for failing to establish that Petitioner suffered from a mental abnormality that precluded him from understanding the severity of his legal situation. Resp. Ex. A at 120-22. Petitioner also argued that his original probation should not have started because he was still in "custody" when he was in the FCCC, and his counsel was ineffective for failing to raise this issue. Id. at 122-23; see Doc. 10 at 7 ("Brown is challenging the court ordered probation being active while at FCCC."). On January 15, 2014, the state court denied the motion, reasoning in pertinent part:

> First, as to Defendant's sub-claims that trial counsel coerced him to plea and that counsel promised Defendant he would only receive a sentence not exceeding ten years, the following exchange between Defendant and the trial court occurred:

> THE COURT: I have in my hand the admission of violation of probation pink form with your full name at the top and what purports to be your full signature here at the bottom. Is that, in fact, your full signature?

> MR. BROWN: Yes, sir.

> THE COURT: And by signing this document you're indicating to the Court that you've had the opportunity to review the contents of this document, including your legal rights, you've discussed it with Ms. Hickson, your lawyer, and she

10

advised you and answered all of your questions to your complete satisfaction?

MR. BROWN: Yes, sir.

THE COURT: And by signing this document you're admitting that you violated your probation, no one has pressured you or forced you into this admission, and no one has promised you anything to get you to enter into this admission; is that correct?

MR. BROWN: Yes, sir.

(Ex. "I" at 4.) A defendant may not seek to go behind his sworn testimony at a plea hearing in a postconviction motion. Stano v. State, 520 So. 2d 278, 280 (Fla. 1988); Bir v. State, 493 So. 2d 55, 56 (Fla. 1st DCA 1986). Based on his sworn testimony during the plea colloquy, which refutes his allegations of coercion, Defendant is not entitled to withdraw his plea. See Johnson, 22 So. 3d at 844; Nelson, 18 So. 3d at 1190.

Additionally, at the time of the entry of his plea, Defendant signed an Admission of Violation of Probation/Community Control and Negotiated Sentence form ("Admission Form"), which contains the following provisions:

4. I understand the charge which has been placed against me and to which I am pleading. My lawyer has explained the maximum penalty to me, as well as the nature of the violation alleged and any defenses I may have. I am fully satisfied with my lawyer's advice and help.

5. "No One has pressured me or forced me to enter this Admission. No one has

promised me anything to get me to enter this Admission ...."

10. I have read every word in this written plea and have discussed it with my lawyer. I understand this form fully ....

(Ex. "G.") By this Admission Form, acknowledged in open court at the time of the entry of his plea, Defendant provided this written testimony to the trial court. See Stano, 520 So. 2d at 280; Bir, 493 So. 2d at 56. His claims to the contrary, now asserted in hopes of withdrawing his plea, are refuted by the record and not properly considered by this Court. Johnson, 22 So. 3d at 844.

In Defendant's second sub-claim within Ground One, Defendant contends that trial counsel was ineffective for failing to object to the accuracy of the sentencing scoresheet, which was allegedly "erroneous and misleading." In Defendant's third sub-claim within Ground One, Defendant opines that counsel was ineffective for failing to conduct a mental evaluation on Defendant due to his "mental abnormality." This Court notes that in both of these claims, Defendant fails to allege how the voluntariness of his plea was affected by these alleged failures by counsel. Instead, Defendant seems to be attacking his sentence, which is distinct from the nature of his plea. Moreover, the record refutes Defendant's claim of ineffectiveness as Defendant's Admission Form states he was "fully satisfied with [his] lawyer's advice and help." (Ex. "O.") Therefore, Ground One is denied.

. . . .

In Ground Two, Defendant alleges that his violation of probation conviction was illegal because he was still incarcerated when the alleged violation occurred. Defendant contends that his initial judgment and sentence Order states that "[i]n the even[t] the

defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before the defendant begins service of the supervision terms." (Def.'s Mot. 3.) Defendant argues that he was in constant custody until January 19, 2009, thus his probation term never began. Defendant claims that counsel was ineffective for failing to bring this issue to the court's attention.

Initially, this Court notes that this claim does not fall into one of the appealable issues designated by Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(a)-(e). Nor is Defendant alleging that he would not have pled guilty to Violation of Probation had defense counsel brought this issue to the court's attention. However, even if Defendant had stated his plea was involuntary due to this issue, and even if the facts as Defendant alleges are true, this Court finds that the record refutes Defendant's claims. According to the first Violation of Probation Affidavit and Report, Defendant's first alleged violation was based off of a capias dated November 13, 2009. (Ex "D.") Thus, this violation occurred over nine months after Defendant's release date of January 19, 2009.

Further, at Defendant's sentencing hearing, Defendant testified that when he was released from the Department of Corrections on January 19, 2009, he was sent to the [FCCC] where his ordered probation began upon his arrival. (Ex. "J" at 7.) All of Defendant's Violation of Probation Affidavits and Reports contain alleged violations that occurred after January 19, 2009 and Defendant has failed to show how counsel was ineffective for failing to argue to the court otherwise. (Ex. "D," "E," "F.") Moreover, pursuant to Defendant's Admission Form, Defendant agreed to the following provision:

> 2. I understand that if the Court accepts this plea, I give up my right to an evidentiary hearing, the right to require

> the State to prove the violation, the right
> to have the Judge decide whether I
> violated my probation/community
> control, the right to see and hear the
> witnesses against me and to have my
> lawyer question them, the right to
> subpoena and present witnesses or other
> evidence or any defenses I may have, and
> to testify or remain silent as I choose. I
> further understand that I give up my
> right to appeal the facts of the case. My
> lawyer has explained to me what an
> appeal is.

(Ex. "G.") Therefore, Ground Two is denied.

Resp. Ex. B at 9-12. Petitioner, through counsel, filed a notice of appeal. See

Resp. Ex. A at 125. Petitioner filed a counseled initial brief, arguing that "the

trial judge abused his discretion in denying [Petitioner's] motion to withdraw

his plea after sentencing without a hearing." Resp. Ex. C at 8 (capitalization

and emphasis omitted). The state filed an answer brief. See Resp. Ex. D. The

First DCA entered a per curiam affirmance on October 3, 2014, without issuing

a written opinion. See Resp. Ex. E.

Petitioner also raised similar claims in his Rule 3.850 proceeding. The

state court denied the claims, finding in pertinent part:

> In Ground One, Defendant avers the trial court
> lacked subject matter jurisdiction and, thus, could not
> revoke Defendant's probation. Specifically, Defendant
> avers that he was illegally committed to the [FCCC] in
> 2009 without violating his probation, thus improperly
> enhancing the sex offender probation to a residential
> program after sentencing.

14

In Ground Two, Defendant contends his conviction violates double jeopardy principles. Defendant states that after he was sentenced in 2002, there was no provision imposing residential sex offender treatment at the [FCCC]. Defendant suggests that it, thus, violated double jeopardy to commit him to the [FCCC] after serving his prison term rather than allowing him to live free on non-residential sex offender probation.

In Ground Three, Defendant suggests counsel was ineffective for failing to advise Defendant of the collateral consequences of his plea or challenge the illegality of Defendant's sex offender probation.

All three Grounds center around Defendant's belief that his probation was changed from non-residential to residential probation after he entered his plea agreement and the trial court sentenced him. However, this is not an accurate position. Civil commitment under Jimmy Ryce is a separate proceeding which does not violate double jeopardy principles or violate previously entered plea agreements that did not discuss such proceedings. See Westerheide v. State, 831 So. 2d 93, 98-105 (Fla. 2002); State v. Harris, 881 So. 2d 1079, 1082-84 (Fla. 2004). For those reasons, counsel cannot be ineffective for failing to advise Defendant otherwise. Accordingly, Defendant is not entitled to relief on these Grounds.

Resp. Ex. G at 45-65. Petitioner appealed, id. at 66, and the First DCA per curiam affirmed the denial of his Rule 3.850 motions without issuing a written opinion, Resp. Ex. H. Petitioner filed a request for a written opinion, Resp. Ex. I, which the First DCA granted, Resp. Ex. J. On February 15, 2019, the First DCA issued the following opinion affirming the denial of Petitioner's Rule 3.850 motions:

In 2002, following a negotiated plea, Brown was convicted of sexual battery and sentenced to seven years in prison, to be followed by five years on sex offender probation. In 2013, he admitted violating his probation and was sentenced to twenty-five years in prison, to be followed by five years on probation, which this Court affirmed in a prior appeal. Brown now files the instant appeal after raising three claims in a postconviction motion.

All claims raised by Brown relate to the fact that when he was released from prison in 2009 to start his probation, he was transferred to the [FCCC], a secure facility under the jurisdiction of the Department of Children and Families. He alleges he never agreed to that "enhancement" of his probationary sentence. In ground one, he alleges the trial court lacked jurisdiction to revoke his probation because his placement in the secure Civil Commitment Center was illegal. In ground two, he argues his placement in the civil commitment center violated his double jeopardy rights because it constitutes an "enhancement" of his probationary term after it was imposed. In ground three, Brown alleges counsel was ineffective for failing to raise those issues and for allowing him to enter a plea to violating his probation when his probation had not yet begun (as he remained confined).

The supreme court has held that involuntary commitment for sexual predators is a civil commitment, not a punishment. See State v. Harris, 881 So. 2d 1079, 1083 (Fla. 2004). As such, a plea agreement for incarceration followed by probation is not violated when a defendant is civilly committed after his release from incarceration. Id. The supreme court specifically rejected the argument raised by Brown that by civilly committing him, the State was adding a term to probation (i.e., requiring him to complete "residential" sex offender treatment). Id. Additionally, because the involuntary commitment of sexual predators is a civil proceeding, not a criminal sentence or punishment, the appellant's civil commitment does

not violate double jeopardy as it does not represent an improper increase in his sentence after it has been imposed. <u>See</u> <u>Westerheide v. State</u>, 831 So. 2d 93, 99-104 (Fla. 2002). Finally, contrary to his assertions, Brown was on probation while in the secure facility. This Court has noted, "a period of probation shall commence immediately upon the release of the defendant from incarceration." <u>Walker v. State</u>, 604 So. 2d 913, 914 (Fla. 1st DCA 1992) (internal quotation and citation omitted). Because the civil commitment is not a sentence or incarceration, his probation started immediately upon the expiration of his seven-year incarcerative sentence and his transfer to the civil commitment facility.

The conclusion that probation starts as soon as a defendant is released to a civil commitment is further supported by section 948.012(6), Florida Statutes. In 2014, the subsection was amended to indicate probation or supervision was to be tolled while a defendant was civilly committed. That section is effective for defendants whose "sentences of probation or community control begin[s] on or after October 1, 2014." § 947-012(6), Fla. Stat. (2014). Here, Brown began his probation in 2009. Thus, prior to 2014, defendants were on probation as soon as they were released to civil commitment under the jurisdiction of the Department of Children and Families. Accordingly, the trial court had jurisdiction to revoke his probation.

Resp. Ex. K; <u>see also</u> <u>Brown v. State</u>, 264 So. 3d 1097, 1098-99 (Fla. 1st DCA 2019).

This Court addresses Petitioner's claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudications of these claims were not contrary to clearly established federal

law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground One.

## B. Ground Two

According to Petitioner, the "trial court lacked jurisdiction to revoke probation." Doc. 1 at 7. He argues that "[b]efore probation can be enhanced either by extension of the time or by additional terms a violation of probation must be formally charged." Id. He asserts that the terms of his probation were "made more stringent by placing him in a civil commitment center" when "[t]he original probation terms did not stipulate in house treatment." Id. Petitioner indicates that he raised this claim in his Rule 3.850 proceeding. Id.

As stated in Ground One, supra, Petitioner raised this claim in his Rule 3.850 proceeding, and the state court denied it. Petitioner appealed, and the First DCA per curiam affirmed the denial in its written opinion, specifically finding that "the trial court had jurisdiction to revoke [Petitioner's] probation." Resp. Ex. K at 3.

This Court addresses Petitioner's claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law,

18

did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### C. Ground Three

Petitioner argues that his "conviction [was] obtained by a violation of the Double Jeopardy Clause." Doc. 1 at 8; <u>see</u> Doc. 10 at 9 ("In the event it could be said Brown was on active probation while in the custody of DCFS, that would violate the double jeopardy clause because of the change in probation terms."). He argues:

> Florida Statutes 1995 defines probation as community supervision. The probation was to be administered by the Department of Corrections. Florida Statutes specifically states that those committed under the Ryce Act shall be under sole control, care and treatment of Children Family and Services. A clear illegal enhancement. Probation should not have began until the civil matter was resolved.

Doc. 1 at 8. He indicates that he raised this claim in his Rule 3.850 proceeding. <u>Id.</u> at 9.

As set forth in Ground One, <u>supra</u>, the First DCA specifically rejected this claim, finding that double jeopardy is not implicated when a defendant is civilly committed after his release from incarceration and that the civil commitment does not add a term to the defendant's probation. Resp. Ex. K. Indeed, the First

DCA reasoned that because the involuntary commitment is civil in nature rather than punitive, Petitioner's "civil commitment does not violate double jeopardy as it does not represent an improper increase in his sentence after it has been imposed." Id. at 2.

This Court addresses Petitioner's claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**D. Ground Four**

Petitioner argues that his counsel was ineffective because "counsel was not knowledgeable about the civil commitment that overlapped the alleged violation of probation. Counsel willingly participated in an illusory plea which was unconstitutional due to a double jeopardy violation." Doc. 1 at 10. He indicates that he raised this claim in his Rule 3.850 proceeding. Id.

As noted in Ground One, supra, the First DCA found that Petitioner's civil commitment did not violate double jeopardy and his probation began when he was released from incarceration. See Resp. Ex. K. Counsel cannot be

considered deficient for failing to raise a meritless issue. See <u>Freeman v. Att'y</u> <u>Gen.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

This Court addresses Petitioner's claims in accordance with the deferential standard for federal court review of state court adjudications. Thus, upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

motion to proceed on appeal as a pauper that may be filed in this case. Such

termination shall serve as a denial of the motion.[3]

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of

August, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/22
c:
Thomas Benjamin Brown, #J22760
Counsel of Record

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.